

# In the
# Missouri Court of Appeals
# Western District

IN THE INTEREST OF: E.B.R. AND ) 
T.R.B.; ) 
         ) WD79507
JUVENILE OFFICER, ) 
         ) OPINION FILED: November 1,
         Respondent, ) 2016
         ) 
v. ) 
         ) 
E.R. (FATHER), ) 
         ) 
         Appellant. ) 

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable John M. Torrence, Judge

Before Division One: Thomas H. Newton, Presiding Judge, Cynthia L. Martin, Judge
and Edward R. Ardini, Jr., Judge

E.R. ("Father") appeals from the trial court's entry of a judgment terminating his

parental rights to E.B-R. and T.R-B. ("Children"). Father argues that the trial court erred

by concluding that he was unfit to be a party to the parent and child relationship under

section 211.447.5(6)[1] because it applied obsolete statutory language; because the evidence was not sufficient to find him unfit; and because the trial court failed to make best interest findings required by section 211.447.7. We affirm.

## Factual and Procedural Background

Father is the biological father of E.B-R., born May 16, 2005, and T.R-B., born May 16, 2006.[2] The Children were placed in the care of the Children's Division on July 6, 2012 following concerns that the Children's mother, T.B. ("Mother"), was dealing with untreated mental health and substance abuse issues, and was subjecting the children to physical abuse. When the Children's Division arrived at Mother's home, the Children were not there. Mother told the Children's Division that the Children were with her sister, but they were later discovered at Father's home. Because Father is a registered sex offender, the children were removed from Father's home.

Father is a registered sex offender because he was convicted of sodomy in February, 1996, following a guilty plea. He had been accused of engaging in deviate sexual intercourse and sodomy with the three-to-four-year-old daughter of his then girlfriend. Father was sentenced to ten years' imprisonment, and was recommended for treatment pursuant to section 559.115. Father was released from prison in August 1996, and was placed on probation until August 2001. Father was discharged from probation on October

[1]All statutory references are to RSMo 2000 as supplemented to the date that the Children's Division filed its original petition to terminate Father's parental rights, or to the date of a referenced criminal conviction where appropriate, except as otherwise noted.

[2]The information before this Court inconsistently represents T.R-B's birth month as February or March of 2006. Either way, T.R-B. is a minor child.

31, 2003. The Children were thus born after Father's terms of incarceration and probation were completed.

While the Children were in the custody of the Children's Division, Father participated in individual therapy which included counseling regarding his crime, and which included assistance with grieving the loss of his children, as Father realized they most likely could not return to his home. Father spoke with his counselor about his desire to be involved in helping to provide long-term placement for his children. Father was not subject to a formal written services agreement. He was permitted weekly supervised visits with the Children, and rarely missed or cancelled a visit. Father's interaction with the Children was reported to be appropriate, though his visits were supervised given his status as a registered sexual offender.

On February 6, 2014, and after the Children had been in the custody of the Children's Division for more than eighteen months, the Juvenile Officer filed a petition for termination of parental rights against both Father and Mother, believing the Children were in need of a permanent placement. In a March 20, 2014 report, the Children's Division noted that Mother had not visited the Children since they came into care in July of 2012. With respect to Father, the report noted that:

> [Father] is not a reunification resource; due to his criminal conviction of Sodomy with a four year old female in 1998.[3] Missouri statute prevents [Father] for [sic] being a reunification resource pursuant to 210.117 RSMo and 211.038 RSMo.

---

[3]Although the report says Father's conviction occurred in 1998, in fact, this conviction was in 1996.

The petition to terminate Father's rights relied exclusively on section 211.447.5(6), and alleged that Father "is unfit to be a party to the parent and child relationship because of conditions which relate to the parent/child relationship of a duration or nature that render him unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the [Children]."

After the petition to terminate parental rights was filed, Mother began participating in services provided by the Children's Division. As a result, and based on Mother's progress, the Children's Division voluntarily dismissed it efforts to terminate Mother's parental rights on January 8, 2015. The Children were returned to Mother's custody in May of 2015.

The petition to terminate Father's parental rights remained pending, however, because on November 13, 2014, several months after the petition had been filed, Father was charged with first degree child molestation. The charge related to conduct involving a three-year-old victim that occurred between April and May of 2007, and thus after the Children were born. Father was convicted following a jury trial on October 15, 2015, and was sentenced to life imprisonment as a predatory sexual offender.

While Father's criminal charges were pending, an adjudication hearing on the petition to terminate Father's parental rights was continued several times. After Father's 2015 conviction, the Juvenile Officer was granted leave to file an amended petition to add factual allegations regarding Father's conviction for child molestation. The petition continued to rely, however, solely on section 211.447.5(6) as the basis to terminate Father's parental rights.

4

Following a trial in November 2015, the trial court entered its judgment on March 9, 2016 terminating Father's parental rights over the Children pursuant to section 211.447.5(6) ("Judgment"). This appeal followed.

**Standard of Review**

A trial court has the authority to terminate the rights of a parent to a child upon petition by the juvenile officer if two conditions are met: first, if there is "clear, cogent and convincing evidence that [statutory] grounds exist for termination," and second, termination must be in the best interest of the child. Section 211.447.6; *In re P.L.O.*, 131 S.W.3d 782, 788 (Mo. banc 2004).

Evidence relied on to establish a statutory ground for termination is clear, cogent and convincing if it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). "Accordingly, this standard of proof may be met although the court has contrary evidence before it." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984). The clear, cogent and convincing standard "operates as a protection of the 'fundamental liberty interest of natural parents in the care, custody, and management of their child.'" *In re B.H.*, 348 S.W.3d 770, 776 (Mo. banc 2011) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

Upon review, this court must affirm a termination of parental rights "unless the 'record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law.'" *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005) (quoting *Murphy v. Carron,* 536 S.W.2d

5

30, 32 (Mo. banc 1976)). We defer to the trial court on issues of credibility and "should review conflicting evidence in the light most favorable to the judgment of the trial court." *In re K.A.W.*, 133 S.W.3d at 11-12.

## Analysis

Father asserts two points on appeal. First, Father argues that the trial court erred in terminating his parental rights because it applied obsolete statutory language, and because, in any event, the evidence did not clearly and convincingly establish a basis for termination pursuant to section 211.447.5(6). Second, Father argues that the trial court erred because it failed to make specific best interest findings required by section 211.447.7.

## Point One

In his first point, Father argues that the trial court erroneously terminated his parental rights pursuant to section 211.447.5(6) because it relied on obsolete statutory language in light of a 2014 amendment to section 211.447.5(6), and because the evidence did not clearly and convincingly establish a basis for termination pursuant to section 211.447.5(6).[4] We disagree.

---

[4]Father's first point relied upon alleges two distinct errors: first, that the trial court committed legal error in relying on obsolete statutory language, and second, that the evidence didn't clearly and convincingly support finding a violation of the statute relied on. This renders Father's first point multifarious in violation of Rule 84.04(d), and not properly preserved for review. *Hueckel v. Wondel*, 270 S.W.3d 450, 453 (Mo. App. S.D. 2008). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Miller v. O'Brien*, 168 S.W.3d 109, 112 (Mo. App. W.D. 2005). We would be justified in dismissing Father's first point on appeal because of this violation. However, "[w]hether we dismiss for a failure to comply with Rule 84.04 is discretionary; we generally will not dismiss unless the deficiencies impede our ability to decide on the merits of the case." *Buckley v. Tipton*, 270 S.W.3d 919, 922 (Mo. App. W.D. 2008). Furthermore, "[i]n cases relating to children's welfare, we may relax the rigid requirements if we can sufficiently ascertain the issues being raised." *Id.* Thus, "we may choose to review a multifarious point, or a part of it, *ex gratia*," and we do so with Father's first point. *In re Wilma G. James Tr. v. James*, 487 S.W.3d 37, 52 (Mo. App. S.D. 2016).

6

*It is immaterial whether section 211.447.5(6) as amended in 2014 applied to the adjudication of Father's parental rights*

The original petition to terminate Father's parental rights relied exclusively on section 211.447.5(6). The statute in effect at the time the original petition was filed provided, in pertinent part, that parental rights could be terminated if:

> The parent is unfit to be a party to the parent and child relationship *because of a consistent pattern of committing a specific abuse, including but not limited to* abuses as defined in section 455.010, child abuse or drug abuse before the child *or of specific conditions directly relating to the parent and child relationship* __either of which__ are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.

(Emphasis added). This language has been interpreted to create two distinct bases for termination of parental rights--(i) a consistent pattern of committing a specific abuse, including but not limited to abuses as defined in section 455.010, child abuse or drug abuse before the child; *or* (ii) specific conditions directly relating to the parent and child relationship--with each basis requiring evidence of "a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child." *See, e.g.*, *In re K.A.W.*, 133 S.W.3d at 20 (noting that "[t]he trial court found that Mother had [engaged in conduct] in such a way as to satisfy both prongs of section 211.447.4(6)[5]--finding both a 'consistent pattern of

---

[5]*In re K.A.W.* addressed the version of section 211.447 adopted in 1998, where the parental unfitness basis for terminating parental rights appears at section 211.447.4(6), instead of at section 211.447.5(6). The content of section 211.447.4(6) in effect at the time *In re K.A.W.* was decided is materially indistinguishable from the content of section 211.447.5(6) in effect when the Juvenile Officer filed its original petition to terminate Father's parental rights.

7

committing a specific abuse' and 'specific conditions directly relating to the parent and child relationship'").

On August 28, 2014, section 211.447.5(6) was amended, in pertinent part, as follows:

> The parent is unfit to be a party to the parent and child relationship *because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship* which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.

(Emphasis added). The amendment deleted the phrase "abuses as defined in section 455.010, child abuse or drug abuse before the child or of;" deleted the phrase "either of;" but kept the phrase "including, but not limited to."[6] Plainly read, the amendment now expresses a clear and unambiguous legislative intent to treat "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child" as a non-exclusive example of "a consistent pattern of committing a specific abuse."

The Juvenile Officer filed its amended petition to terminate Father's parental rights in November 2015, and thus after section 211.447.5(6) was amended in 2014. The amended petition continued to rely solely on section 211.447.5(6) as the basis for

---

[6]The 2014 amendment to section 211.447.5(6) also specifies conduct that permits a presumption that a parent is unfit to be a party to the parent and child relationship. The version of section 211.447.5(6) in effect prior to the 2014 amendment afforded such a presumption, but only where a parent's parental rights had been involuntarily terminated within the prior three years as to another child. The presumptions of parental unfitness identified in both the pre-and post-2014 versions of section 211.447.5(6) are not at issue in this case

8

terminating Father's parental rights, and continued to allege only that Father was "unfit to be a party to the parent and child relationship because of conditions which relate to the parent/child relationship of a duration or nature that render him unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the [Children]." The Judgment expressly found Father unfit to be a party to the parent and child relationship "because of conditions which relate to the parent/child relationship of a duration or nature that renders him unable for the foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the [Children]," and thus terminated Father's parental rights pursuant to section 211.447.5(6).

Father alleges that because the Juvenile Officer's amended petition was filed after the 2014 amendment to section 211.447.5(6), the trial court was required to apply the amended version of the statute, and instead erroneously relied on the version of section 211.447.5(6) in effect at the time the petition to terminate his parental rights was originally filed. Father contends that the 2014 version of section 211.447.5(6) increased the Juvenile Officer's burden, by requiring evidence of "a consistent pattern of committing a specific abuse" in addition to evidence of "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child." Father thus argues that the trial court failed to independently consider or find that he engaged in a "consistent pattern of committing a specific abuse."

9

We disagree. The 2014 amendment to section 211.447.5(6) plainly declares that "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child" are an example of "a consistent pattern of committing a specific abuse." In other words, if clear and convincing evidence establishes "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child," then no further evidence of "a consistent pattern of a specific abuse" need be shown.[7]

As a result, it is irrelevant whether the version of section 211.447.5(6) in effect when the petition to terminate Father's parental rights was originally filed, or the 2014 amended version of the statute, applied to adjudication of Father's parental rights. In either case, if clear and convincing evidence demonstrated "specific conditions directly relating to the parent and child relationship . . . of a duration or nature that renders [Father] unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or

_____

[7]Father argues in his Brief that his present incarceration, his prior felony child sex crime convictions, and his statutory ineligibility as a reunification resource are not "abuse." Father's argument erroneously presupposes that the use of the word "abuse" in section 211.447.5(6) can only refer to "abuse" of a nature that grievously endangers a child. If the pre-2014 version of section 211.447.5(6) applies to Father's case, than the concept of "abuse" is irrelevant, as Father's rights were terminated based on the distinct basis of "specific conditions directly relating to the parent and child relationship." If the 2014 amended version of section 211.447.5(6) applies to Father's case, then we are bound by the fact that the General Assembly has defined, in effect, "a consistent pattern of committing a specific abuse" to include "specific conditions directly relating to the parent and child relationship" of the requisite duration or nature, whatever those conditions may be.

10

emotional needs of the [Children]," then a statutory basis to terminate Father's parental rights was established.

***Clear, cogent and convincing evidence established specific conditions directly relating to the parent and child relationship of a duration or nature that renders Father unable for the reasonably foreseeable future to care for the ongoing physical, mental, or emotional needs of the Children***

As noted, the Judgment found Father unfit to be a party to the parent and child relationship "because of conditions which relate to the parent/child relationship of a duration or nature that renders him unable, for the foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the [Children]." In support of this finding, the trial court observed:

> Specifically, the father was convicted of felony sodomy in violation of Section 566.060 RSMo in Case Number 16CR95-4155. The victim in that case was a four year old child. Additionally, the father was convicted of Felony Child Molestation in the First Degree in violation of Section 566.067 RSMo in Case Number 1416-CR03946-01. The child victim in that case was three to four years old at the time of the abuse. The father was sentenced to the Missouri Department of Corrections for life imprisonment rendering him unable to care appropriately for the physical, mental and emotional needs of the children, not only for the foreseeable future but, conceivably, for the rest of the father's life. The father has formed a positive relationship with the children over the years and had regular, supervised contact with them prior to his pretrial incarceration in the 2014 criminal case. The father has never completed a sexual offenders program and is not a reunification resource per 210.117 RSMo and 211.038 RSMo. Although, incarceration alone is not a ground for termination of parental rights under Missouri law, the lengthy conditions and circumstances that exist in these cases rise to the level of unfitness and are such that the father is simply unable to care appropriately for the needs of his [children].

Father does not challenge the trial court's factual findings. Instead, Father argues that there was no evidence that his felony convictions involved the Children. Father also argues that his convictions were twenty years apart and do not establish a "consistent pattern" of

11

specific abuse. Finally, Father argues that the effect of the trial court's finding was to terminate his parental rights based solely on his incarceration. Father's arguments are not persuasive.

Father offers no authority for the proposition that in determining whether section 211.447.5(6) has been established as a grounds for terminating parental rights, a trial court can only consider parental conduct directly involving a child over whom jurisdiction has been assumed. A conclusory argument without citation to applicable authority preserves nothing for appellate review. *See Sidebottom v. State*, 781 S.W.2d 791, 800 (Mo. banc 1989). More to the point, Father's argument ignores that the specific conditions the trial court relied on to find parental unfitness were Father's lengthy term of incarceration and his statutory ineligibility as a reunification resource, conditions that *do* directly impact and involve the Children.

Father also complains that his convictions were twenty years apart, and thus do not constitute a "consistent pattern" of a specific abuse. Father's argument presumes that the 2014 amendment of section 211.447.5(6) controls the adjudication of his parental rights, and that a "consistent pattern of specific abuse" is not established by evidence of specific conditions directly relating to the parent and child relationship of a duration or nature rendering Father unable for the reasonably foreseeable future to care for the needs of the Children. Moreover, Father's argument is misdirected. The "specific conditions" the trial court identified were not the convictions which occurred twenty years apart, but were instead the collective ramifications of those convictions--a lifetime prison sentence, Father's statutory characterization as a predatory sexual offender, *and* Father's statutory

12

ineligibility as a reunification resource. These conditions were found by the trial court to be of a duration or nature that rendered Father unable for the reasonably foreseeable future to care appropriately for the Children, a conclusion Father also does not challenge on appeal. In other words, the specific conditions identified by the trial court were not "based solely upon instances of . . . past conditions, but [will] have some likelihood of affecting the parent-child relationship going forward." *In re C.S.*, 351 S.W.3d 264, 267 (Mo. App. W.D. 2011). Because the specific conditions identified satisfy the requisite duration or nature requirement, they automatically qualify as a legislatively expressed example of "a consistent pattern" of specific abuse.

Finally, the trial court did not terminate Father's parental rights solely because Father is incarcerated. The Judgment expressed as much, and identified other critical factors, including the length of Father's incarceration, and that the nature of Father's conviction rendered him statutorily ineligible as a reunification resource. In any case, the premise of Father's argument is flawed. Although section 211.447.7(6) does provide that "incarceration in and of itself shall not be grounds for termination of parental rights," that section addresses factors a trial court is to consider to determine whether termination of parental rights is in a child's best interest. For reasons we address in connection with Father's second point on appeal, section 211.447.7 has no application to termination of parental rights cases pursuant to section 211.447.5(6).

We conclude that substantial evidence supports the trial court's finding that specific conditions directly relating to the parent and child relationship exist of a duration or nature that renders Father unable to care appropriately for the Children for the reasonably

13

foreseeable future, justifying the termination of Father's parental rights pursuant to section 211.447.5(6), regardless whether the pre- or post-2014 version of the statute is applied.

The outcome here is not unlike that reached in *In re C.S.* where this court affirmed a termination of parental rights pursuant to section 211.447.5(6) where "[f]ather's lengthy term of out-of-state incarceration . . . combined with the twins' young age and the lack of a close bond between [f]ather and the twins, constituted a specific condition that would render [f]ather unable, for the reasonably foreseeable future, to care appropriately for the twins' needs." 351 S.W.3d at 267. Though in the instant case, Father was found by the trial court to enjoy a bond with the Children, the nature of his criminal convictions rendered it a legal impossibility for Father to ever be reunified with the Children, a fact that, coupled with Father's lengthy term of imprisonment, constitutes specific conditions of a duration or nature that rendered Father unable to appropriately care for the Children for the reasonably foreseeable future.

Point one on appeal is denied.

### Point Two

Father argues in his second point on appeal that the trial court failed to make statutorily required findings that termination of his parental rights would be in the Children's best interests as required by section 211.447.7,[8] and that because the trial court failed to do so, "it abused its discretion in ultimately ruling to terminate" Father's parental rights. [Appellant's Brief, p. 21] Father's argument is without merit.

---

[8]Section 211.447.7 was not amended in 2014.

14

Section 211.447.7 provides that "[w]hen considering whether to terminate the parent-child relationship pursuant to subsection 2 or 4 of this section or subdivision (1), (2), (3) or (4) of subsection 5 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case." By its plain terms, section 211.447.7 ***does not apply*** to a termination of parental rights pursuant to section 211.447.5(6). By specifically expressing the subdivisions and subsections as to which section 211.447.7 applies, the legislature has expressed by omission the subdivisions and subsections as to which section 211.447.7 does ***not*** apply. "A disparate inclusion or exclusion of particular language in another section of the same act is 'powerful evidence' of legislative intent." *State v. Bass*, 81 S.W.3d 595, 604 (Mo. App. W.D. 2002) (quoting *Jantz v. Brewer*, 30 S.W.3d 915, 918 (Mo. App. S.D. 2000)). We thus conclude that the legislature intended to exclude section 211.447.5(6) from the ambit of section 211.447.7. *See id.* ("[T]he legislature is presumed to have acted intentionally when it includes language in one section of a statute, but omits it from another."). The trial court had no obligation, therefore, to evaluate, or make findings with respect to, the best interest factors identified in section 211.447.7.[9] *See In re C.S.*, 351 S.W.3d at 267 (noting that "section

---

[9]Even if the trial court had been obligated to make statutory best interest findings pursuant to section 211.447.7, we would nonetheless deny Father's second point on appeal as Father concedes that he failed to file a Rule 78.07(c) motion after entry of the Judgment challenging the trial court's failure to make required findings. Under Rule 78.07(c), "allegations of error relating to the form or language of [a] judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Although a trial court's failure to make statutorily required best interest findings is considered error, such error "is not preserved unless a motion [pursuant to Rule 78.07(c)] is filed . . . specifically challeng[ing] the failure to make statutorily mandated findings." *K.L.A. v. Aldridge*, 241 S.W.3d 458, 462 (Mo. App. W.D. 2007) (quotation omitted) (addressing section 452.375.6, an analogous statute requiring best interest findings in a child custody case).

15

211.447.7(6) does not expressly apply to findings of unfitness under section 211.447.5(6)").

It is true that section 211.447.6[10] generally provides that a "juvenile court may terminate the rights of a parent to a child . . . if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 4 or 5 of this section." In other words, in *every* termination of parental rights case, including this one, a court must satisfy itself that termination is in the best interest of the child. However, section 211.447.6 does not require a general best interest finding to be included in a judgment terminating parental rights. Section 211.447.7 is the only subsection which addresses when best interest findings are statutorily required to be included in a judgment. Thus, though the Judgment in this case did not include a "best interest" finding, it was not required to do so by either section 211.447.6 or section 211.447.7. And Father did not request best interest findings as he would have been permitted to do pursuant to Rule 73.01(c). *See In re Marriage of Geske*, 421 S.W.3d 490, 497 (Mo. App. S.D. 2013) ("While a party may request that the trial court include specific findings in its judgment, pursuant to Rule 73.01(c), where he does not do so prior to the introduction of evidence, the trial court is under no obligation to specifically identify the facts it utilized in its determinations."). *See Gant v. Gant*, 892 S.W.2d 342, 346 (Mo. App. W.D. 1995) (holding that where findings on a subject are not statutorily required, a party cannot complain about the absence of findings in a judgment

---

[10]Section 211.447.6 was not amended in 2014.

16

unless they were requested pursuant to Rule 73.01). We therefore presume that that the trial court followed the law, and found all facts in accordance with the result reached, including that termination of Father's parental rights was in the Children's best interest. *See* Rule 73.01(c).[11]

Point two on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

---

[11]Father does not argue on appeal that the trial court violated section 211.447.6 by failing to include even a general best interest finding in the Judgment.