

# Missouri Court of Appeals

## Southern District

### Division Two

TIMOTHY J. BALDON, )
)
    Petitioner-Respondent, )
)
v. )    No. SD36210
)
AMANDA E. BALDON, )    **Filed: March 3, 2020**
)
    Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell

**AFFIRMED**

Amanda E. Baldon ("Mother") appeals the judgment that granted grandparent visitation rights with her son ("Child") to Child's paternal grandfather ("Grandfather"), the father of Mother's deceased husband ("the judgment"[1]). In two points, Mother claims that she did not deny Grandfather reasonable visitation for a period exceeding 90 days. Because the challenged factual finding depended upon the trial court's resolution of conflicting testimony (and a determination of its appropriate weight), we affirm.

### Standard of Review & Governing Law

Our standard of review requires us to affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

---

[1] The case was tried before a family court commissioner. The commissioner made findings and recommendations that were then adopted by the circuit court in its judgment. For purposes of simplicity, we refer to these distinct judicial officers collectively as "the trial court."

> *Blakely v. Blakely*, 83 S.W.3d 537, 540 (Mo. banc 2002). We defer to the trial court's findings of fact, but do not defer to the trial court on questions regarding the declaration or application of the law. *Keeran v. Myers*, 172 S.W.3d 466, 468 (Mo. App. S.D. 2005). We grant great deference to the trial court's ability to determine witness credibility; the trial court determines what portions of a witness's testimony to believe or disbelieve. *Id.*

**Clay v. Clay**, 552 S.W.3d 692, 695 (Mo. App. E.D. 2018).

In addition to other qualifying circumstances, a trial court may award grandparent visitation when "[o]ne parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child" *and* that "grandparent is unreasonably denied visitation with the child for a period exceeding ninety days." Section 452.402.1(2) and (4);[2] **Pfeifer v. Deal**, 498 S.W.3d 799, 801-04 (Mo. App. S.D. 2015).

## The Evidence

We recite the evidence, as we must, in the light most favorable to the judgment. *Id.* at 800. Child was born to Mother and Christopher Baldon ("Father") in August 2016. During the first year-and-a-half of Child's life, Grandfather visited with Child approximately thirteen times. Those visits took place both in Iowa, where Grandfather lives, and in Missouri, where Child lived with Mother and Father.

Mother and Father separated in November 2017, and an action to dissolve their marriage was pending when Father passed away on April 2, 2018. Mother did not allow Grandfather to see Child after Mother and Father separated until April 28, 2018.[3]

---

[2] Unless otherwise noted, all statutory citations are to RSMo Cum. Supp. 2018.
[3] Grandfather testified that his first visit with Child after Father's death took place on either April 28 or 29. The exact date is not important to our analysis, and we have chosen to use the earlier date. After Father and Mother's separation in November 2017, and before Father's death in April, 2018, Grandfather had at least two visits with Child when Child was with Father and Mother was not present.

A month after that visit, on May 30, 2018, Grandfather filed his "**MOTION FOR GRANDPARENT VISITATION**" ("the original petition"). The original petition alleged that after Father's death, Mother had "hindered or limited visitation [] of [Child] with [Grandfather]." Grandfather later filed an "**AMENDED PETITION FOR GRANDPARENT VISITATION**" ("the amended petition") on February 22, 2019. The amended petition included the additional claim that Mother had denied Grandfather reasonable visitation for a period of more than 90 days.

Between April 28, 2018, and August 22, 2018, a period exceeding 90 days, Mother either denied Grandfather's requests for visits outright or, on one occasion, placed significant conditions on the requested visit that Grandfather did not meet. As a result, Grandfather did not see Child for a period of more than 90 days. After that gap in visits, Grandfather began receiving "somewhat regular visits" with Child due to a mediation process that resulted in a temporary visitation order ("Temporary Visitation Order") that the trial court entered on January 31, 2019.

After conducting a trial on the amended petition, the trial court entered the judgment, which found that Mother had denied reasonable visitation to Grandfather for more than 90 days between April 28, 2018 and August 22, 2018. The judgment awarded Grandfather unsupervised and unrestricted visitation with Child on the following schedule:

- Weekend visits during the even months of the year, beginning on the second Friday of the month and ending on the following Sunday.

    o In February, August, and December, those visits would take place in Springfield, Missouri, from Friday at 6:00 p.m. through Sunday at noon.

    o In April, June, and October, the visits would take place in Iowa from Saturday at noon through Sunday at 3:00 p.m.

- Summer visits (to replace the June visits), beginning in 2022, starting at four nights and increasing by one night per year until 2025, when the visit would last one week.

- Grandfather was also allowed to have additional contact with Child in Springfield at Child's extracurricular or school events that grandparents would routinely be expected to attend.

We will recite additional relevant evidence within the context of our analysis of Mother's individual points on appeal.

**Analysis**

*Point 1 – Pleadings Defect & "Artificially-Created" Gap in Visits*

Mother's first point claims:

The [t]rial [c]ourt erred in granting [the amended petition] because the [original p]etition and the [a]mended [p]etition both failed to state a claim upon which relief could be granted and there were no grounds upon which the trial court could enter either its [Temporary Visitation Order] or [j]udgment in that 1) if the [90]-day time frame in [section] 452.402 [] is a precondition to the filing of a [p]etition and/or an [a]mended [p]etition [Grandfather] both received visitation during the [90] days prior to the filing of either document and [Grandfather] created an artificial timeframe of [90] days by refusing to accept the conditions of a visitation but accepted those conditions in later visits or 2) if the [90] days is only a precondition to the entry of an order then the entry of the [Temporary Visitation Order] and the judgment fails in this case because [] [Grandfather] had received visitation in the [90] days prior to their entry and [Grandfather] had artificially created an artificial timeframe of [90] days by refusing to accept the conditions of a visitation but accepted those conditions in later visits.

Mother's first argument[4] – that the grandparent visitation statute requires a denial

of visitation for 90 days prior to the filing of a *petition* – is contrary to the controlling

---

[4] Because Mother's point contains more than one claim of error, it is thereby multifarious -- preserving nothing for our review. But because the best interest of a child is involved, and the failure to comply with Rule 84.04 does not materially impede impartial review, we have chosen to exercise our discretion to review its complaints -- as best we understand them -- *ex gratia*. ***City of Joplin v. Wallace Bajjali Dev. Partners, L.P.***, 522 S.W.3d 327, 330-31 (Mo. App. S.D. 2017). All rule references are to Missouri Court Rules (2019).

case law. Our high court has determined that the grandparent visitation statute "requires only that the 90 day period elapse before a visitation *order* is entered." ***Barker v. Barker***, 98 S.W.3d 532, 534 (Mo. banc 2003) (emphasis added) (holding a trial court has jurisdiction to order grandparent visitation based upon a petition filed less than 90 days after grandparents were first denied visitation) (citing ***Blakely***, 83 S.W.3d at 544, and ***Herndon v. Tuhey***, 857 S.W.2d 203, 210 (Mo. banc 1993)). *See also **Massman v. Massman***, 505 S.W.3d 406, 413 (Mo. App. E.D. 2016) (stating that a 90-day-denial is a precondition to obtaining a court order of visitation under the statute). As a result, the trial court did not misapply the law in concluding that the petitions stated a claim for which relief might be granted.

Mother's next claim -- that if the 90-day timeframe is only a precondition to the entry of an *order* -- then the Temporary Visitation Order and judgment still fail because Grandfather received visitation during that 90-day timeframe and "artificially created" a 90-day gap in visitation by refusing to accept Mother's reasonable conditions on the visits. The following evidence is relevant to this part of her claim.

In June 2018, Grandfather requested a visit with Child while Grandfather was vacationing in Silver Dollar City with his wife and two other individuals. The following series of text messages then ensued:

> [Mother:]    [Child] is not going anywhere alone with you. We will
>
>             meet YOU, at a public place for a visit.
>
> [Grandfather:] We will only have one car so all of us will be together.
>
>             Why can't I take him to [Grandfather's cousin's home to
>
>             play with other children Child's age]?

[Mother:]      Do you not remember what [Child] did last time when you tired [sic] to pick him up? He doesn't know you. They can go to [the cousin's house] and you can come visit someplace.

The requested visit did not take place. Grandfather also requested a visit with Child during the weekend before Mother's Day, which also included a funeral service for Mother's father. Mother denied that requested visit, stating that it would be a stressful time for her, and Child would be visiting with her family. Finally, Grandfather requested that Child be allowed to visit with Grandfather and his wife in July 2018, a visit that Mother denied on "the advice of [her] attorney[.]"

Grandfather's testimony was that after his visit with Child on April 28, 2018, he texted Mother and "inquired about getting visits[,]" and Mother "said no, denied." His next visit with Child was "through the courts" on August 22, 2018. This testimony constituted substantial evidence supporting the trial court's finding that Mother denied visitation to Grandfather for a period of more than 90 days, and Mother implicitly recognizes the existence of that substantial evidence by asserting her Point-2 claim that the order and judgment were "against the great weight of the evidence[.]" *See **Houston v. Crider***, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (holding that such a challenge presupposes that the judgment is supported by substantial evidence).

The trial court found that Mother's restrictions surrounding the June 2018 visit were unreasonable and that "[i]t is evident from other texts sent around this time that Mother did not want Grandfather to visit with [Child]." It further found that

[Mother's] stated reasons for wanting limited and restricted visitation for Grandfather appear pretextual. Her position is more likely a result of

6

immature anger stemming from the death of [Father] and the state of their marriage prior to his death. Mother has difficulty separating those issues from what [Child's] best interests are in maintaining a relationship with [Father]'s side of the family. Mother will not allow meaningful contact between Grandfather and [Child] unless it is by court order.

While Mother disputed that any of her denials were "unreasonable," "[t]he trial court was not required to believe [her] testimony or consider the limit[s] reasonable." *Barker*, 98 S.W.3d at 535 (upholding a trial court's finding that parents unreasonably denied grandparents visitation when parents required the visits to be in their presence).

The amended petition stated a claim for which relief could be granted, and Mother has failed to cite any authority for the proposition that an "artificially created" gap in visitation may be deemed to have occurred as a matter of law. Point 1 is denied.

*Point 2 – Judgment Against the "Great" Weight of the Evidence*

Point 2 claims that the trial court's decision was "against the great weight of the evidence" because, apart from the June 2018 visit that Grandfather "refused," he received regular visitation with Child. That point states, *in toto*:

> The [t]rial [c]ourt's decision to grant the [amended petition] for Grandparent Visitation was in error in that the [trial c]ourt's decision was against the great weight of the evidence because the evidence and testimony weighed heavily in favor of a decision for [Mother] and not for [Grandfather] wherein [Grandfather] received visitation on a regular basis from before the filing of the [original p]etition until the entry of the [j]udgment except for the visit in June of 2018 that was refused by [Grandfather] and which created an artificial timeframe of [90]-days without visitation by not agreeing with the restrictions set forth by [Mother], and which the [trial c]ourt and [Grandfather] found to be unreasonable even though those same restrictions were later applied to future visits by the [trial c]ourt and the [trial c]ourt did not find that the denials in May of 2018 and July of 2018 were unreasonable.

We interpret this claim to be that even if Grandfather technically met the threshold condition of eligibility for court-ordered visitation, such a visitation order (and

7

later judgment) was unnecessary because "the great weight of the evidence" indicated that Grandfather had been receiving regular visitation. The analysis process required to support an against-the-weight-of-the-evidence claim is as set forth in **Houston**, 317 S.W.3d at 187.[5]

The factual proposition necessary to sustain the judgment that Mother appears to challenge is that she unreasonably denied Grandfather visitation for a period of 90 days. However, all of Mother's arguments (1) impermissibly rely upon evidence subject to credibility findings by the trial court, *see Cox v. Cox*, 504 S.W.3d 212, 220-21 (Mo. App. W.D. 2016); and (2) reiterate arguments we rejected in our analysis of Point 1. These failings rob Mother's argument of any analytical or persuasive value. **Ivie v. Smith**, 439 S.W.3d 189, 202 (Mo. banc 2014).

The trial court did not credit Mother's alleged concerns surrounding Grandfather's visits with Child. Instead, it specifically rejected them as pretextual and a cover for Mother's anger at Father. The trial court further found that Mother did "not present any *credible* reason as to why [Child] should not be allowed to continue a relationship with Grandfather." (Emphasis added.)

---

[5] An against-the-weight-of-the-evidence challenge requires four sequential steps:

    (1)  identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
    (2)  identify all of the favorable evidence in the record supporting the existence of that proposition;
    (3)  identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
    (4)  demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.*

Point 2 is also denied, and the judgment of the trial court is affirmed.


DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS